```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
PATRICK SALVADOR,                        :       15cv5164(DLC)
                                         :
                    Plaintiff,           :       OPINION AND ORDER
                                         :
          -v-                            :
                                         :
THE CITY OF NEW YORK, THE NEW YORK       :
CITY POLICE DEPARTMENT, and POLICE       :
OFFICER JOSE RODRIGUEZ, Shield No.       :
006634 and OFFICER "JOHN DOE,"           :
                                         :
                    Defendants.          :
                                         :
---------------------------------------- X
```

APPEARANCES:

For the plaintiff:
John Grill
Law Offices of John P. Grill, PC
229 Nimham Road
Carmel, NY 10512

For the defendants:
Joshua Mathew Friedman
New York City Law Department
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

　　This § 1983 action arises out of the arrest and prosecution of Patrick Salvador ("Salvador"). Salvador alleges that individual officers of the New York City Police Department ("NYPD") subjected him to an illegal search, a false arrest, and a malicious prosecution. The defendants have moved to dismiss the complaint in its entirety under Rule 12(c), Fed. R. Civ. P.

1

For the reasons that follow, the defendants' motion is granted.

## Background

These facts are taken from the complaint or documents integral to the complaint. On September 18, 2014, Salvador was at his home in the Bronx. The defendant police officers entered the plaintiff's apartment pursuant to a warrant that allowed them to search for firearms.[1] After searching a bureau, the officers found some Oxycodone[2] pills in a plastic bag in the same drawer as the prescription bottle for those pills. The plaintiff contends that the pills were lawfully his and that they were in a plastic bag because the lid had fallen off of their proper container. The police officers also found cartons of cigarettes that did not have the tax stamps that would have been required for their resale. Salvador contends that the cigarettes were not intended for resale and were for his personal use.

The officers arrested Salvador for three drug crimes under NYPL § 220.16(1), NYPL § 220.06(1), and NYPL § 220.03. He was also charged with violating NYSTL § 1817(a) and NYAC § 20-453 in

---

[1] The search warrant was issued on September 15, 2014, and signed by Justice Harold Adler of the Supreme Court of the State of New York, Bronx County. The search warrant was annexed to a declaration attached to the defendants' motion to dismiss, and as discussed below, is appropriately considered as integral to the complaint.

[2] The plaintiff also sometimes refers to the pills as Oxycontin.

2

connection with the unstamped cigarette cartons.  The charges were dismissed on March 24, 2015.

The plaintiff contends that the search warrant was invalid because it was not supported by probable cause.  In support of this allegation, Salvador claims that the warrant was based only on statements made by a confidential information ("CI").  According to the complaint, the CI did not provide a physical description of the person who allegedly possessed a gun nor did his statement contain information about the surrounding circumstances in which he came to believe that Salvador had a gun.  Based on these facts, the complaint alleges that the CI was "patently unreliable."  Ultimately, the police did not find a gun in the apartment.  The complaint also claims that it was improper for the NYPD officers to seize Oxycodone pills and cigarettes because the search warrant only allowed them to search for firearms and there was no reason to believe that those items were connected with criminal activity.

As a result of these events, the plaintiff brings the following claims under 42 U.S.C. § 1983: (1) false arrest; (2) malicious prosecution; and (3) unreasonable search and entry.  The amended complaint originally contained a claim of municipal liability under Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658 (1978).  The plaintiff later consented to dismissal of the Monell claim and confirmed that he does not

3

bring any of his claims under state law.

The original complaint was filed on July 1, 2015. The case was selected for participation in this district's § 1983 mediation plan under Local Rule 83.10. In a letter of January 6, 2016, the plaintiff indicated that mediation would not be successful and requested an initial conference. The conference was held on February 19. An amended complaint was filed on February 22. The defendants filed the instant motion to dismiss the amended complaint on March 21. The plaintiff filed his opposition on March 24,[3] and the motion became fully submitted on April 15.

## Discussion

When deciding a motion to dismiss under Rule 12(b), Fed. R. Civ. P., a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief." Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim

---

[3] Included in the plaintiff's opposition was a cross-motion for certain discovery.

4

for relief that is plausible on its face."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208 (2d Cir. 2014) (citation omitted). The standard of review is the same for a 12(c) motion. Mantena v. Johnson, 809 F.3d 721, 727 (2d Cir. 2015).[4]

In deciding a motion to dismiss, documents outside the pleadings may be considered in certain circumstances. For example, documents "that the plaintiffs either possessed or knew about and upon which they relied in bringing suit" may be considered. Smith v. Hogan, 794 F.3d 249, 254 (2d Cir. 2015) (citation omitted). Moreover, "a court may consider an 'integral' document where the complaint relies heavily upon its terms and effect." Id. (citation omitted). The defendants

---

[4] The defendants originally filed this motion as a Rule 12(c) motion because they answered the initial complaint. When the plaintiff filed an amended complaint, the defendants filed a renewed motion to dismiss under Rule 12(c). Because there has been no amended answer and the legal standards for adjudicating 12(b)(6) and 12(c) motions are identical, the Court will consider the defendants' motion to be a Rule 12(b)(6) motion. See Healthcare Ass'n of New York State, Inc. v. Pataki, 471 F.3d 87, 94 (2d Cir. 2006) (a Rule 12(c) motion can only be made after an answer is filed); Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 57 (2d Cir. 1985) (affirming a district court's decision to treat a Rule 12(b)(6) motion as a Rule 12(c) motion in light of the procedural history of the case).

attached several exhibits to their motion to dismiss, including the September 15, 2014 search warrant at issue here.  That document is integral to the complaint because its validity is at the core of Salvador's claims.

Section 1983 provides a cause of action for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  The plaintiff brings his claims based on violations of his Fourth Amendment rights.

## I. Illegal Search and Entry

The Fourth Amendment provides in relevant part that:

> The right of the people to be secure in their . . . houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"Search warrants are ordinarily required for searches of dwellings."  Missouri v. McNeely, 133 S. Ct. 1552, 1558 (2013) (citation omitted).  A warrant is valid if it meets three general criteria: (1) it was issued by a "neutral and detached magistrate," id.; (2) it is supported by probable cause, United States v. Galpin, 720 F.3d 436, 445 (2d Cir. 2013); and (3) "the scope of the authorized search is set out with particularity." Id. (citation omitted).  The particularity requirement has its

own three components: (1) "a warrant must identify the specific offense for which the police have established probable cause"; (2) "a warrant must describe the place to be searched"; and (3) "the warrant must specify the items to be seized by their relation to designated crimes." Id. at 445-446 (citation omitted).  "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." Id. at 446 (citation omitted).

"Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness." United States v. Clark, 638 F.3d 89, 100 (2d Cir. 2011) (citation omitted).  "[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Id. (citation omitted).  Moreover, "[w]hen reviewing a challenged warrant, [courts] accord considerable deference to the probable cause determination of the issuing magistrate." United States v. Thomas, 788 F.3d 345, 350 (2d Cir. 2015), cert. denied, 136 S. Ct. 848 (2016) (citation omitted).  Thus, "the task of a reviewing court is simply to ensure that the totality of the circumstances afforded the magistrate a substantial basis for making the requisite probable cause determination." Id. (citation omitted).

"As has long been recognized, probable cause is a fluid

concept . . . not readily, or even usefully, reduced to a neat set of legal rules." Clark, 638 F.3d at 94 (citation omitted). "[I]t is generally understood that probable cause to search is demonstrated where the totality of the circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place." Id. (citation omitted). Probable cause need not be stated in the warrant itself. Id. at 103. "When making a determination of whether probable cause exists to support the issuance of a search warrant when the facts offered are based upon information from a confidential informant, [courts] examine[] the totality of the circumstances." McColley v. Cty. of Rensselaer, 740 F.3d 817, 823 (2d Cir. 2014) (citation omitted). In connection with this inquiry, courts may consider, among other factors, "an informant's veracity, reliability and basis of knowledge, and the extent to which an informant's statements are independently corroborated." Id. (citation omitted).

"Qualified immunity protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Morse v. Fusto, 804 F.3d 538, 546 (2d Cir. 2015) (citation omitted). Qualified immunity "balances two important interests -- the need to hold public

8

officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability" when they act reasonably.  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (per curiam).  It is appropriate to consider the question of qualified immunity at the motion to dismiss stage.  Garcia v. Does, 779 F.3d 84, 97 (2d Cir. 2015).  "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012).  The "shield of immunity otherwise conferred by the warrant will be lost . . . where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  Id. (citation omitted).  This is a difficult threshold to meet because "an officer cannot be expected to question the magistrate's probable cause determination."  Id. (citation omitted).

The plaintiff's Fourth Amendment claim for illegal search and entry is dismissed.  The September 15, 2014 warrant was issued by a Justice of the New York Supreme Court, who acted as a neutral magistrate.  The warrant stated with particularity the place to be searched, including the plaintiff's address and a description of where to find his individual apartment.

9

Moreover, the warrant described the items that were the object of the search, specifically firearms and evidence demonstrating that the apartment was used for unlawful possession of firearms. The complaint does not identify any facts that, if true, would render the warrant invalid in light of the substantial deference that must be paid to the issuing judge.  Moreover, given that the warrant was facially valid, the individual officers acted reasonably in executing it.  The plaintiff has not identified any reason why the officers should have questioned the judge's determination that probable cause supported the issuance of the warrant or alleged that they acted unreasonably in relying on the judge's determination.  Thus, the officers are shielded by qualified immunity.

   The plaintiff's arguments to the contrary are not persuasive.  The plaintiff primarily contends that he is entitled to discovery concerning whether the warrant was supported by probable cause.  Given that the warrant was facially valid, however, and the complaint does not contain any facts suggesting that the officers violated the scope of that warrant when they opened the drawer to the bureau and saw the Oxycodone pills, the complaint has fallen short of the minimal requirements for surviving a motion under Rule 12, Fed. R. Civ. P.

   The plaintiff also impliedly challenges the search as

outside the scope of the warrant, which by its terms covered firearms and evidence of illegal possession or ownership thereof.  This case falls within the "plain view" exception to the warrant requirement, however.  United States v. Andino, 768 F.3d 94, 99 (2d Cir. 2014).  The "plain view" doctrine provides that:

> [L]aw enforcement personnel may seize an item without a warrant provided that it is immediately apparent that the object is connected with criminal activity, and further provided that the officers viewed the object from a lawful vantage point -- i.e., that the officers have not violated the Fourth Amendment in arriving in the place from where they can see the object.

Id. at 99-100 (citation omitted).

The plaintiff is correct that the Oxycodone pills were outside the scope of the warrant, which permitted the officers to search for and seize firearms.  The plaintiff does not argue, however, that the police officers exceeded the scope of the warrant when they opened the drawer of his bureau.  On the facts alleged in the complaint, the pills were in a plastic bag in the drawer that the police lawfully opened to execute the search warrant.  Thus, the plain view doctrine allows for their seizure because the officers were reasonable in determining that the pills were connected with criminal activity.  As discussed in more detail below, the pills were in a plastic bag and were not in their proper container.  This method of storing the pills

11

itself violated the law.

## II. False Arrest

A false arrest claim, brought pursuant to § 1983 and the Fourth Amendment, requires a plaintiff to prove "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Liranzo v. United States, 690 F.3d 78, 95 (2d Cir. 2012) (citation omitted). "To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015).

An officer "has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Garcia, 779 at 92 (citation omitted). "Probable cause is determined on the basis of facts known to the arresting officer at the time of the arrest." Shamir v. City of New York, 804 F.3d 553, 557 (2d Cir. 2015) (citation omitted). The arresting officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Garcia, 779 F.3d

at 93 (citation omitted).  "At most, probable cause may be defeated if the officer deliberately disregards facts known to him which establish justification."  Id. (citation omitted). Moreover, an officer need only have probable cause to believe that an offense was committed; the offense does not need to be the particular crime charged.  Marcavage v. City of New York, 689 F.3d 98, 109-10 (2d Cir. 2012).  In other words, the "probable cause inquiry is not necessarily based upon the offense actually invoked by the arresting officer but upon whether the facts known at the time of the arrest objectively provided probable cause to arrest."  Brown v. City of New York, 798 F.3d 94, 99 (2d Cir. 2015) (citation omitted).

The defendants have asserted that they are entitled to qualified immunity on the plaintiff's false arrest claim.  An officer "is entitled to qualified immunity against a suit for false arrest if he can establish that he had arguable probable cause to arrest the plaintiff."  Garcia, 779 F.3d at 92 (citation omitted).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  Id. (citation omitted).  Courts "look to the information possessed by the officer at the time of arrest" when determining whether an officer's conduct was objectively reasonable.  Id.

(citation omitted).

The defendants identify two offenses for which there was probable cause to arrest Salvador. The first is N.Y. Pub. Health Law § 3345, which provides that: "Except for the purpose of current use by the person . . . for whom such substance was prescribed or dispensed, it shall be unlawful for an ultimate user of controlled substances to possess such substance outside of the original container in which it was dispensed." The penalty for violating § 3345 is a fifty dollar fine. Id. In other words, even if the substance was prescribed to Salvador, "the substance must remain in the original container in which it was dispensed." People v. Fielden, 18 N.Y.S.3d 581, 2015 WL 4460568 at *6 (N.Y. Crim. Ct. 2015). Additionally, Salvador was charged with violating NYPL § 220.03, which provides that: "A person is guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance."[5] A violation of § 220.03 is a Class A misdemeanor. Id.

The plaintiff's false arrest claim is dismissed because there was probable cause -- or at least arguable probable cause

---

[5] Section 220.03 also "explicitly requires an underlying Public Health law offense, as the word 'unlawfully' is defined in Penal Law § 220.00(2) as 'in violation of article thirty-three of the public health law.'" Bravo v. State, 11 N.Y.S.3d 138, 139 (1st Dep't 2015).

-- to believe he had committed a criminal offense. Police officers discovered pills in a plastic bag outside of their original container. As discussed above, the police lawfully searched the drawer where the pills were found pursuant to their warrant to search for firearms. Thus, it was reasonable for officers to believe that there was probable cause to arrest Salvador for violating § 3345 or § 220.03. This is true for two reasons even if the pill bottle was in close proximity to the plastic bag. First, the presence of the pills in a plastic bag outside of their original container constituted a literal violation of § 3345. Second, as discussed above, officers are not required to eliminate every theoretically plausible claim of innocence before making an arrest. Under the circumstances present here, the officers acted reasonably when they determined that there was probable cause to arrest Salvador.

The plaintiff's arguments to the contrary are unavailing. Salvador principally contends that there was no probable cause to support any of the offenses charged, in particular because some of them have as an element an intent to sell. Similarly, the plaintiff claims that there was no reason to believe that he intended to re-sell the unstamped cigarettes at the apartment and therefore there was no probable cause to support his arrest for the charged violations of New York tax laws and the New York City Administrative Code. The plaintiff further argues that the

15

"unlawful" element of § 220.03 cannot be satisfied where the plaintiff had a prescription for the pills that he was arrested for possessing outside of their original container.

The plaintiff's arguments may be rejected for two reasons. First, as discussed above, probable cause need only exist for an offense, not all of the offenses charged or even any of the specific offenses invoked at the time of arrest. Thus, because there was probable cause to arrest Salvador for violating § 3345 and § 220.03, there need not have been probable cause to arrest him for any of the other charged crimes in order to defeat his false arrest claim. Second, there was probable cause to believe that the plaintiff's possession of the pills was unlawful because he violated the literal language of § 3345. The officers were not required to credit Salvador's claims that he would be the ultimate user of the pills, nor does the amended complaint identify any facts tending to show that the police officers ignored facts known to them that voided probable cause. Even if, as the plaintiff claims, the pill bottle was right next to the bag of pills, that does not overcome the fact that there was at least arguable probable cause to arrest him for a literal violation of § 3345.

Salvador's final argument is that, because § 3345 is only punishable by a $50 fine, his arrest for that offense was unreasonable and violated the Fourth Amendment. In other words,

Salvador argues that, even if there was probable cause to arrest him for violating § 3345, such probable cause does not insulate the defendants from liability. This argument is squarely defeated by controlling precedent. See, e.g., Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (holding that an officer does not violate the Fourth Amendment when he arrests an individual for a minor criminal offense punishable only by a fine); United States v. Bernacet, 724 F.3d 269, 277 (2d Cir. 2013) (any state procedural limitations on arrests for minor offenses do not affect the Fourth Amendment analysis).

### III. Malicious Prosecution

"To establish a malicious prosecution claim . . . a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Stampf v. Long Island R. Co., 761 F.3d 192, 198 (2d Cir. 2014) (citation omitted). "[T]o be actionable under [§] 1983 there must be a post-arraignment seizure, the claim being grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution." Stansbury v. Wertman, 721 F.3d 84, 94-95 (2d Cir.

17

2013) (citation omitted). "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." Id. at 95. "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Id. (citation omitted). Moreover, "[p]olice officers do not generally 'commence or continue' criminal proceedings against defendants." Bermudez v. City of New York, 790 F.3d 368, 377 (2d Cir. 2015) (citation omitted). There is an exception when police officers "play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." Id. (citation omitted).

Salvador's malicious prosecution claim is dismissed for two reasons. As discussed above, there was probable cause to believe that he had violated § 3345 and § 220.03. Such probable cause defeats a claim of malicious prosecution. Moreover, Salvador did not allege that the defendants in this action initiated or continued the prosecution, as required under the malicious prosecution standard. There is nothing to suggest that the officers played an "active role" in Salvador's prosecution beyond the scope of their duties as arresting

officers.[6]

The plaintiff's arguments opposing dismissal are not persuasive. The plaintiff contends that, because there was no probable cause to arrest him, there cannot be probable cause to prosecute him. As discussed above, there was probable cause for his arrest and his prosecution under the facts alleged in the complaint. Salvador also claims that the officers initiated the prosecution because the officers withheld information from the prosecutors, thus overcoming the presumption that the prosecutor exercises independent judgment in deciding whether to initiate a criminal proceeding. The plaintiff's recitation of this argument is conclusory, however, and therefore cannot defeat a motion to dismiss. Salvador argues only that the defendants "withheld the critical information that plaintiff had a valid prescription for the Oxycodone in his apartment." He does not allege that the police officers intentionally transmitted false information to the prosecution or otherwise engaged in activities that would overcome the presumption that the prosecution exercises independent judgment in prosecuting the defendant. See Wray v. City of New York, 490 F.3d 189, 195 (2d

---

[6] The defendants also argue that the plaintiff has failed to allege malice. Because the motion to dismiss can be granted on the basis of the probable cause and the initiation elements of malicious prosecution, the Court need not consider the question of malice.


Cir. 2007) (clarifying the circumstances when the chain of causation is broken in a malicious prosecution claim).

### Conclusion

The defendants' March 21, 2016 motion to dismiss is granted in its entirety. The plaintiff's cross-motion for discovery is denied as moot. The Clerk of Court shall enter judgment for the defendants and close the case.

Dated: New York, New York
May 19, 2016

_____
DENISE COTE
United States District Judge